IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD DIAB,

    Plaintiff,

    v.                                  No. CIV 14-0764 LH/LAM

DETECTIVE DARCY MCDERMITT,

    Defendant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on *Defendant McDermeit's Martinez Report* [*Doc. 67*][2] and motion for summary judgment [*Doc. 68*], both filed on September 17, 2015. In addition, Defendant McDermeit filed a Notice of Errata [*Doc. 79*] on October 1, 2015, which provides a missing page to her Affidavit in the *Martinez* Report, and filed a supplement to the *Martinez* Report [*Doc. 84*] on October 19, 2015. Plaintiff filed responses to the *Martinez* report on September 30, 2015 [*Doc. 78*] and October 13, 2015 [*Doc. 81*], and Defendant McDermeit filed a reply on October 22, 2015 [*Doc. 86*]. Also before the Court are Plaintiff's motions asking the Court for various relief, including, *inter alia*, default judgment, discovery, punitive damages,

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] The proper spelling of Defendant's last name appears to be "McDermeit" (*see Docs. 67* and *68*), instead of "McDermitt" as it was spelled in Plaintiff's Complaint.

to reinstate a dismissed Defendant, to amend Plaintiff's Complaint, and for a hearing and jury trial. *See* [*Docs. 39, 40, 41, 42, 43, 44, 48, 49, 55, 56, 60, 69, 70, 71, 72, 75, 76, 91, 92, 94, 100, 101, 106, 111, 112, 118, 119,* and *124*]. United States District Judge C. LeRoy Hansen referred the claims raised in this case to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 6*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, recommends that Defendant's motion for summary judgment [*Doc. 68*] be **GRANTED**, that all of Plaintiff's motions be **DENIED**, and that Plaintiff's claims and this case be dismissed with prejudice.

## *Background*

Plaintiff is an inmate proceeding *pro se* and *in forma pauperis*. On August 22, 2014, Plaintiff filed his original civil rights complaint [*Doc. 1*], and then filed four amended complaints [*Docs. 3, 11, 12,* and *15*]. On February 24, 2015, the presiding judge in this case, considering Plaintiff's original and four amended complaints, dismissed all Defendants except Detective Darcy McDermeit and Parole Officer Betheny Gutierrez. *See* [*Doc. 19* at 6-7]. On May 13, 2015, the presiding judge dismissed all of Plaintiff's claims against Defendant Gutierrez, leaving Defendant McDermeit (hereinafter "Defendant") as the sole remaining Defendant. *See* [*Doc. 25*].

Plaintiff's allegations against Defendant stem from an investigation into a homicide that led to Plaintiff's arrest for an open count of murder and tampering with evidence. *See* [*Doc. 67-2* at 30].[3] Plaintiff contends that Defendant violated his constitutional rights when she obtained a warrant to arrest him because the facts relied on by Defendant in her arrest warrant affidavit were not accurate, she withheld exculpatory evidence in the arrest warrant affidavit, and she failed to try

---

[3] Plaintiff was subsequently tried by a jury and found not guilty for the crimes of First and Second Degree Murder and Voluntary Manslaughter. *See* [*Doc. 67-4* at 53].

2

to find the person whom Plaintiff contends committed the crime for which Plaintiff was tried.  *See* [*Doc. 1* at 9], [*Doc. 12* at 2 and 4-5] and [*Doc. 15* at 2]. *See also* Order to file a *Martinez* Report [*Doc. 46* at 1]. In her motion for summary judgment, Defendant contends that she is entitled to qualified immunity with regard to Plaintiff's claims. *See* [*Doc. 68* at 10-17].

### *Legal Standard Under Rule 56*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citation omitted). Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id.* at 671. The nonmoving party may not rest on his or her pleadings, but must set forth specific facts "identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein" showing there is a genuine issue for trial. *Id.* (citations omitted). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citations omitted).

Summary judgment motions based on qualified immunity are reviewed differently than other summary judgment motions in that, when a defendant asserts qualified immunity, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088

(10th Cir. 2009) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011) (citation and internal quotation marks and brackets omitted). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional precedent beyond debate." *Id.* (citations omitted). "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (citation and internal quotation marks omitted).

Because Plaintiff is proceeding *pro se*, the Court must review his pleadings liberally and hold them to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this does not mean that the Court can "assume the role of advocate for the pro se litigant." *Id.*

*Analysis*

A civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1996). To state a claim

4

under § 1983, an injured person must allege a violation of a federally protected right, and must show that the alleged deprivation was committed by an individual acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  In this case, while Plaintiff does not articulate a specific constitutional basis for his claims, his challenge to the validity of the warrant that was issued for his arrest comprises a claim under the Fourth Amendment for arrest absent probable cause.  *See Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (explaining that a claim for wrongful arrest and detention is governed by the Fourth Amendment).  "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime."  *Id.* at 1562 (citations and internal quotation marks omitted).

In her motion for summary judgment, Defendant contends that she had probable cause to seek an arrest warrant for Plaintiff based on: (1) a witness at the scene of the death who indicated that they heard the decedent arguing with someone who was later identified as Plaintiff; (2) Plaintiff's statement that he was in the apartment at the time the decedent was stabbed; (3) scratch marks on Plaintiff's neck and a stab wound to his left hand; and (4) the DNA analyst's report indicating a likelihood that Plaintiff's DNA was found under the fingernails of the decedent. *See* [*Doc. 68* at 3-5 and 10] (citing *Doc. 67-1* at 14-17, 24-26, 34-37, and 44) (investigation reports and notes) and (*Doc. 67-2* at 30-34) (arrest warrant).  *See also* [*Doc. 67-4* at 59-62] and [*Doc. 79*] (affidavit of Defendant) and [*Doc. 67-4* at 63-66] (affidavit of Donna Manogue, DNA analyst). Defendant states that she submitted a true and accurate summary of the investigation in an arrest warrant affidavit to Judge Murdoch for his review and approval, which included information that was exculpatory for Plaintiff, such as that Plaintiff claimed that two black men were the ones who assaulted the decedent, and his explanations for the stab wound to the back of his hand and his

other injuries.  *See* [*Doc. 68* at 5] (citing arrest warrant at *Doc. 67-2* at 30-34).   Judge Murdoch agreed there was enough information for a probable cause determination, and he signed the arrest warrant.   [*Doc. 68* at 5] (citing *Doc. 67-2* at 29).

In response, Plaintiff does not dispute that the information contained in Defendant's affidavit, taken as true, provides probable cause for Plaintiff's arrest.   Rather, Plaintiff argues that the information provided by Defendant in the affidavit, and relied upon by Judge Murdoch in issuing the arrest warrant, was false or can be explained.   For example, Plaintiff states that he was not the person whom witnesses said was arguing with the decedent (*see Doc. 78* at 1-2), he explains how he got his injuries (*id.* at 7 and 16-17), and he contends that the information given to Defendant was not accurate and that Plaintiff was not properly identified by the witnesses (*id.* at 9-10).

The Tenth Circuit has explained that "[i]t is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit," or to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause."   *Taylor*, 82 F.3d at 1562 (citations and internal quotation marks omitted).   In support of his claims that Defendant violated his constitutional rights by seeking an arrest warrant, Plaintiff contends that the people Defendant interviewed were unreliable, and that Plaintiff was under the influence of a narcotic when he first spoke with the detectives.   *See* [*Doc. 78* at 3-9] and [*Doc. 81* at 1].   The Court finds that this does not establish a violation of Plaintiff's constitutional rights because, even if true, Plaintiff does not make a showing that Defendant had knowledge that any of the witnesses were not telling the truth, and Defendant, in her arrest warrant affidavit, relied on information Plaintiff provided on more than one occasion.   *See, e.g.,* [*Doc. 67-2* at 33-34].

6

Plaintiff next contends that Defendant improperly relied on the DNA evidence because: (1) the DNA analyst, Ms. Manogue, stated that she never scraped under the decedent's fingernails (*see Doc. 1* at 9); (2) Ms. Manogue used the decedent's fingernail "clippings," not his fingernail "scrapings" as stated in Defendant's affidavit (*Doc. 78* at 20-21); (3) Ms. Manogue later disclaimed the findings in her DNA report (*id.* at 25); and (4) Ms. Manogue said that she was not involved in drafting the arrest warrant affidavit (*id.*). In her affidavit, Ms. Manogue states that she examined Plaintiff's saliva standard sample and compared it to the fingernail clippings of the decedent, and that the results of this comparison were that Plaintiff could not be excluded as a possible contributor to the DNA from the fingernail clippings from the decedent. [*Doc. 67-4* at 63-64]. Ms. Manogue further states that, more than two-and-a-half-years after her initial report, she was asked by the District Attorney prosecuting Plaintiff's case to update her report "to correct a statistical calculation error." *Id.* at 65. She explains that this correction "indicated a random match probability in place of the likelihood ratio" that was used in her initial report. *Id.*

The Court finds that the use of the word "scrapings" instead of "clippings" by Defendant in her arrest warrant affidavit does not constitute a "false statement" because either term indicates that the decedent's fingernail samples were examined. The Court also rejects Plaintiff's contentions that the DNA evidence was unreliable because Ms. Manogue stated that she never scraped under the decedent's fingernails (*see Doc. 1* at 9), and said that she was not involved in drafting the arrest warrant affidavit (*see Doc. 78* at 25). Even though Ms. Manogue stated that the decedent's fingernail clippings were collected by the Office of the Medical Investigator, not by her (*see Doc. 67-4* at 64), and that she was not involved in the preparation of the arrest warrant affidavit (*id.* at 66), neither of these statements affects the credibility of Ms. Manogue or her report. Finally, the Court finds that the fact that Ms. Manogue later corrected a portion of her

report at the request of the District Attorney does not negate the credibility of the report at the time Defendant relied on it. While it is not clear from Ms. Manogue's affidavit whether the new calculation significantly changed her initial findings, the Court finds that, even if it did, Plaintiff fails to show that Ms. Manogue's initial report and Defendant's reliance on it was made with knowing or reckless disregard for the truth. In addition, the Court notes that Defendant relied on other evidence to support her arrest warrant affidavit, not just the DNA evidence. Therefore, the Court finds that Defendant did not violate Plaintiff's Fourth Amendment rights by relying on the DNA report in her arrest warrant affidavit.

Plaintiff next contends that Defendant violated his constitutional rights by excluding exculpatory evidence from her arrest warrant affidavit. *See* [*Doc. 78* at 8-9]. Plaintiff contends that Defendant failed to include his explanations about how he received his injuries, and that the witnesses who identified Plaintiff were not confident in their identification of him. The Court finds that this claim is without merit because Defendant included in her affidavit Plaintiff's explanations as to how he received his injuries, Plaintiff's explanation of events, and that one of the witnesses stated that a photo of Plaintiff looked like the suspect, but that the suspect was thinner. *See* [*Doc. 67-2* at 31-34]. Plaintiff's disagreement with the witnesses' accounts of what they saw does not establish a knowing or reckless omission of exculpatory evidence on the part of Defendant. The Court, therefore, finds that Plaintiff has failed to show that Defendant excluded exculpatory evidence from her arrest warrant affidavit.

Finally, Plaintiff contends that Defendant failed to try to find the person whom Plaintiff contends committed the crime for which Plaintiff was tried. Plaintiff contends that Defendant instructed another detective to follow up and visit the mental health department at the University of New Mexico ("UNM") Hospital and that this detective found "important evidence which could

have corabarated [sic] my story but he does not turn it over." [*Doc. 1* at 9]. Plaintiff also contends that he knew of an individual who was treated at the UNM Hospital the day before the murder, and told the doctor he was going to hurt someone, and that Plaintiff's lawyer's investigator learned that this person was staying in a motel near the murder scene. *See* [*Doc. 12* at 5]. The Court finds that these contentions, even if true, fail to establish that Defendant violated Plaintiff's constitutional rights. "[O]fficers are not required to conduct full investigations before making an arrest." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1257, n.8 (10th Cir. 1998); *see also Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995) (finding that the officer's failure to investigate Plaintiff's alibi witnesses prior to arrest did not constitute a constitutional violation). Moreover, an officer "is under no obligation to give any credence to a suspect's story, and even a plausible explanation in no way requires the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Spalsbury v. Sisson*, Nos. 06-1193, 06-1319, 250 Fed. Appx. 238, 246, 2007 WL 2705722 (10th Cir. Sept. 11, 2007) (unpublished) (citations and internal quotation marks omitted). "[T]he probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence or otherwise inquire if a crime has been committed." *Id.*. Here, the Court finds that Defendant conducted a proper inquiry and had ample support for the statements she made in her arrest warrant affidavit, regardless of whether there might have been another suspect.

To the extent Plaintiff contends that Defendant violated his constitutional rights for failure to conduct a reasonable post-arrest investigation, the Court finds that this claim is also without merit. To succeed on such a claim, Plaintiff must assert facts that demonstrate that Defendant acted with deliberate or reckless intent. *See Romero*, 45 F.3d at 1478. Plaintiff makes no such showing, and, instead, it appears that there was an investigation into the person whom Plaintiff

9

contends may have committed the crime, and that evidence regarding this investigation was provided to Plaintiff's counsel at trial. *See, e.g.,* [*Doc. 67-3* at 94-95] (e-mails between the assistant district attorney and Plaintiff's counsel regarding the records from UNM Hospital) and [*Doc. 78* at 28] (Plaintiff's statement that the records from UNM Hospital were produced on the first day of Plaintiff's trial). The Court, therefore, recommends that this claim be denied.

For the reasons set forth above, the Court finds that Defendant did not violate the Fourth Amendment when she presented the arrest warrant affidavit to Judge Murdoch, and did not violate Plaintiff's constitutional rights regarding a post-arrest investigation. The Court, therefore, finds that Defendant is entitled to qualified immunity and recommends dismissal of Plaintiff's claims against her.

### *Plaintiffs' Motions*

Plaintiff has filed numerous motions in this case asking for relief from the Court. Because the Court has found that Plaintiff's claims against the sole remaining Defendant in this case are without merit and recommends dismissal of his remaining claims, the Court further recommends that all of Plaintiff's motions asking for default judgment, discovery, or other relief connected to his claims be denied. *See* [*Docs. 39, 40, 41, 42, 43, 44, 48, 49, 55, 56, 60, 69, 70, 71, 72, 75, 76, 91, 92, 94, 100, 101, 106, 111, 112, 118, 119,* and *124*]. The Court finds that none of the requested discovery or other relief asked for by Plaintiff in those motions would affect the Court's determination that Defendant did not violate Plaintiff's constitutional rights. Plaintiff had sufficient information in the *Martinez* report to present his claims and respond to Defendant's motion for summary judgment. To the extent that Plaintiff seeks additional discovery to support new claims or claims that have already been dismissed, the Court finds that Plaintiff has failed to set forth good cause for such relief.

10

The Court also recommends denying Plaintiff's motions to add defendants and claims. [*Docs. 49, 55, 75,* and *76*]. "[T]he district court may deny leave to amend where amendment would be futile." *Jefferson County School Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Id.* Plaintiff first seeks to add Detective R. Landovazo as a defendant, stating that he "could be the other detective assigned to this case as Det. Darcy McDerm[eit']s partner." [*Doc. 49* at 1]. The Court recommends denying this motion because it is based on a conclusory allegation without supporting facts. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (explaining that courts "are not required to fashion Defendant's arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]"); and *Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Furthermore, Plaintiff fails to state how Detective Landovazo's actions in any way differed from those of Defendant McDermeit, whose actions the Court has found do not violate Plaintiff's constitutional rights.

Next, in *Document 75*, Plaintiff seeks to add two detectives, Detectives M.D. Manary and Detective G. Gonzalez, whom he contends were assigned to investigate the person Plaintiff suspects is the one who committed the murder, and Plaintiff states that these detectives "found evidence which was exculpatory to the defence [sic] and they never turned it in to the case file for it to be part of the discovery." [*Doc. 75* at 1]. Specifically, Plaintiff contends that the evidence that was not turned over consisted of mental health records from UNM Hospital. *Id.* The Court finds that this motion is futile because, as Plaintiff himself acknowledges, these records were in the possession of the Assistant District Attorney, Sue Calloway, and were presented during Plaintiff's

11

trial. *See id.* (stating that it was Ms. Calloway, not the detectives, who "never turned [the evidence] over to the defence [sic]," and that the evidence is "sealed in district court"). The record of this case further shows that Ms. Calloway discussed this evidence with Plaintiff's defense counsel prior to Plaintiff's trial, and that she stated she would make copies for him. *See* [*Doc. 67-3* at 94-95] (e-mails from Ms. Calloway to Plaintiff's counsel discussing the records from UNM Hospital regarding the other possible suspect, stating that she would get the discovery from Detective Manary to Plaintiff's counsel). Therefore, Plaintiff's claim that these detectives withheld evidence is without merit and the Court recommends denying Plaintiff's motion to add them as defendants.

Plaintiff also seeks to add ten defendants, stating only that he intends to bring conspiracy claims against them based on the information in the *Martinez* report. *See* [*Doc. 76*]. The Court finds that it would be futile to grant this motion because, as set forth above, the Court has found that there has been no violation of Plaintiff's constitutional rights, so there is no merit to Plaintiff's claim that there was a conspiracy. The Court, therefore, recommends that this motion also be denied.

Finally, the Court recommends denying Plaintiff's motion to add claims of withholding exculpatory evidence, violation of due process, and tampering with evidence, all of which relate to Plaintiff's claim that Defendant McDermeit failed to investigate another suspect whom Plaintiff alleges committed the murder (*Doc. 55* at 1-3), and to add the claim of "false arrest," stating that he was arrested without probable cause (*id.* at 4-6). The Court first notes that these claims merely appear to be restatements of the claims the Court has already addressed. Moreover, the Court already considered four amended complaints filed by Plaintiff at the beginning of his case, and

Plaintiff had ample opportunity to bring these claims earlier. Therefore, the Court recommends denying this motion as well.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the Court recommends that Defendant's motion for summary judgment [*Doc. 68*] be **GRANTED**, that all of Plaintiff's motions be **DENIED**, and that Plaintiff's claims and this case be **DISMISSED with prejudice.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**